994 So.2d 65 (2008)
OMEGA CONSTRUCTION
v.
THORNCO, INC.
No. 2007 CA 1806.
Court of Appeal of Louisiana, First Circuit.
August 21, 2008.
*66 Patrick H. Patrick, New Orleans, Louisiana, for Plaintiff/Appellee, Omega Construction Company L.L.C. and Louisiana Commerce and Trade Association-Self Insurers' Fund.
Stephen W. Brooks, Jr., Richard J. Voelker, Covington, Louisiana, for Defendant/Appellant, Thornco, Inc.
Before GAIDRY, McDONALD, and McCLENDON, JJ.
GAIDRY, J.
This appeal is from a summary judgment granted in a workers' compensation case in favor of the plaintiff, Omega Construction Company ("Omega"), on its claim for reimbursement and contribution from defendant borrowing employer, Thornco, Inc. ("Thornco"), for workers' compensation benefits paid to an injured worker. Finding that Thornco was in fact a borrowing employer and that there was no contract between the parties establishing a different method of sharing liability, we affirm.

FACTS AND PROCEDURAL HISTORY
Omega Construction filed a disputed claim for compensation alleging that its *67 employee, Eduardo Vargas, was injured in an accident on June 21, 2002, while working under the supervision and control of Thornco. Omega sought reimbursement from Thornco, in accordance with La. R.S. 23:1031(C), of the benefits it has paid and will pay in the future to Vargas. Thornco answered the claim, alleging that Omega employed Vargas, not Thornco, and thus no reimbursement or contribution was due.
Omega filed a motion for summary judgment on the issue of whether Vargas was a borrowed employee of Thornco under La. R.S. 23:1031(C) at the time of his injury. The workers' compensation judge granted the motion for summary judgment, finding that there was no genuine issue of material fact as to Vargas's borrowed employee status. Thornco attempted to appeal or seek writs from this ruling, but this court denied the motion for appeal and the writ application on the grounds that review should await a final ruling in the case.
Thornco and Omega then filed cross motions for summary judgment on Omega's claim for reimbursement and contribution. The workers' compensation judge denied Thornco's and granted Omega's motion for summary judgment, finding that Omega was entitled to reimbursement from Thornco of fifty percent of the benefits already paid to Vargas and contribution from Thornco of fifty percent of the benefits to be paid to Vargas, who was a borrowed employee of Thornco at the time of his accident. This appeal followed, with Thornco raising the following three assignments of error:
1. The workers' compensation judge erred in finding that Vargas was a borrowed employee at the time of his accident;
2. The workers' compensation judge erred in ordering Thornco to reimburse Omega for benefits paid and to contribute to future benefits because the contract between Omega and Thornco required Omega to take sole responsibility for paying workers' compensation to Omega's employees; and
3. Thornco should be entitled to some sort of equitable relief on appeal in the form of reduced interest or reduced costs because it took an unusual length of time for the appellate record to be prepared and filed.

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary judgment is favored and "is designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Sanders, 96-1751 at 7, 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Walker v. Phi Beta Sigma Fraternity (RHO Chapter), 96-2345, p. 6 (La. App. 1 Cir. 12/29/97), 706 So.2d 525, 528.
*68 Louisiana Revised Statutes 23:1031(C) provides, in pertinent part:
C. In the case of any employee for whose injury or death payments are due and who is, at the time of the injury, employed by a borrowing employer in this Section referred to as a "special employer", and is under the control and direction of the special employer in the performance of the work, both the special employer and the immediate employer, referred to in this Section as a "general employer", shall be liable jointly and in solido to pay benefits as provided under this Chapter. As between the special and general employers, each shall have the right to seek contribution from the other for any payments made on behalf of the employee unless there is a contract between them expressing a different method of sharing the liability.
A single individual may be the "general" employee of one employer and a "special" employee of another. The simplest example of a general employer-special employer relationship is the labor pool that hires out the labor pool employees to a special employer who will assume control of the labor pool personnel in the performance of a particular task. McGinnis v. Waste Management of Louisiana, L.L.C., 40,330 p. 6, (La.App. 2d Cir.10/26/05), 914 So.2d 612, 616. The issue of whether a borrowed employee relationship exists is a matter of law for the court to determine. There is no fixed test, nor is the existence of a contract or any other single factor determinative. However, the following factors should be considered in determining the existence of a special or borrowed employee relationship: right of control; selection of employees; payment of wages; power of dismissal; relinquishment of control by general employer; which employer's work was being performed at the time in question; agreement, either implicit or explicit between the borrowing and lending employer; furnishing of instructions and place for performance of the work in question; length of employment; and acquiescence by the employee in the new work situation. Griffin v. Wickes Lumber Co., 02-0294 p. 7, (La.App. 1 Cir. 12/20/02), 840 So.2d 591, 596.
Kenneth Carmouche, Thornco's field superintendent, testified that Omega's workers were essentially a labor pool used to replace the workers that would otherwise have been provided by Thornco on the project. The Project Proposal Letter prepared by Omega and signed by Carmouche on behalf of Thornco stated that Omega would supply all necessary labor to Thornco for work on the project; it was also noted that Omega's "man crew including our lead man is going to be under the responsibility of Thornco. Inc.'s foreman, our responsibility is to do strictly what we are told to perform the work." A Thornco employee supervised the work by Omega's employees on the job site and verified the hours reported on their time cards. Thornco paid Omega an hourly rate for its workers based upon the timesheets submitted weekly by the workers. At the weekly project meetings, Omega did not have a representative present, but a Thornco representative attended and passed along information to Omega workers. Testimony from various witnesses revealed that Omega's workers received their work orders from Thornco. At the time of the accident, Mr. Vargas was assisting a welder using a welding machine provided by Thornco. Although Omega hired its own employees, Thornco had the right to require that a particular worker be removed from the job or replaced. Kenneth Carmouche testified that if he saw an Omega worker not working productively or safely, he could require Omega to remove him from the project and replace *69 him with another worker. After a review of the pleadings, depositions, answers to interrogatories, and affidavits in the record on the motion for summary judgment, we conclude that there exists no genuine issue of material fact that Thornco was Vargas's special or borrowing employer under La. R.S. 23:103(C).
Regarding Thornco's argument that the parties agreed that all workers' compensation benefits would be paid by Omega, we do not find this to be supported by the record. The written agreement between Omega and Thornco contains nothing regarding an agreement to deviate from La. R.S. 23:1031(C)'s contribution provisions for borrowing or special employers. Thornco alleges that there was an understanding between the parties that Omega would be responsible for paying workers' compensation benefits for its workers if they were injured on the job. In support of this, Thornco offers the testimony of Cindy Thornton and other Thornco representatives that companies were always required to provide proof of insurance before they were allowed to begin work for Thornco, and Cindy Thornton testified that she had received proof of Omega's workers' compensation insurance before Omega's workers began working on this project. Thornco representatives testified that they required this proof of insurance because they intended for the general employer to be responsible for workers' compensation benefits for their employees. This evidence of Thornco's alleged intent is insufficient to establish an agreement between the parties to deviate from the contribution provisions of La. R.S. 23:1031(C). This assignment of error is without merit.
Turning to Thornco's final argument that it should be entitled to some sort of equitable relief on appeal in the form of reduced interest or reduced costs because it took what Thornco alleges was an unusual length of time for the appellate record to be prepared and filed, Thornco offers no legal support for this argument, and we have found none. This assignment of error is without merit.

DECREE
Finding no merit in any of Thornco's assignments of error, we affirm the summary judgment in favor of Omega. Costs of this appeal are assessed to Thornco.
AFFIRMED.